IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

VIVIAN L. WILLIAMS,          )
                                   )
       Plaintiff,          )
                                   )
v.                               )     No. 3:02-0805
                               )     Judge Nixon
                               )     Magistrate Judge Brown
JO ANNE B. BARNHART,       )
Commissioner of Social Security,  )
                                 )
       Defendant.        )

## MEMORANDUM ORDER

This case is before the Court on cross-motions for judgment on the administrative record (Doc. Nos. 15 and 17). Magistrate Judge Brown has issued a Report and Recommendation (Doc. No. 22) ("R&R") to which Plaintiff has filed objections (Doc. No. 23). Plaintiff has also filed a Submission of New Authority in Support of Plaintiff's Motion for Judgment on the Administrative Record (Doc. No. 24).

Plaintiff raises several objections to the Magistrate Judge's recommendation that Plaintiff's motion for judgment on the administrative record be denied, and that the decision of the Commissioner be affirmed. The Court will address each of these objections. Upon review of the record and for the reasons stated herein, the Court ADOPTS the Magistrate Judge's Report and Recommendation in its entirety.

# I.    INTRODUCTION

## A.    Procedural Background

Plaintiff, Vivian Williams ("Plaintiff" or "Williams") has sought disability insurance benefits ("DIB") and supplemental social security income payments ("SSI"). On March 22, 1999, Plaintiff filed her first application for DIB and SSI, alleging that her disability began on May 2, 1998 due to a heart attack and a stent implant. (Administrative Record ("AR") 111-13, 130, 325-27.) The claim was denied initially and upon reconsideration by the Commissioner of Social Security ("Defendant"). (AR 87-89, 90-96, 99-100, 328-30.) On April 27, 2000, an Administrative Law Judge ("ALJ"), before whom Plaintiff and her counsel appeared, issued a written decision denying Plaintiff's applications. (AR 20-44.) On June 13, 2002, the Appeals Council denied Plaintiff's request for review (AR 7-8), thereby rendering the ALJ's decision the final decision of the Commissioner.

This civil action was thereafter timely filed, and the Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The Court referred this matter to the Magistrate Judge who recommended that the Court affirm the Commissioner's denial of benefits. The Magistrate Judge found that the ALJ did not err in the following: his failure to (1) find her disabled pursuant to 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05C (Mental Retardation); (2) identify and consider all of her severe impairments; (3) defer to, or even address, the recommendation of the treating cardiologist; and (4) find her disabled pursuant to grid rule 202.09 (Illiteracy). Plaintiff objects to each of the Magistrate Judge's findings.

Case 3:02-cv-00805   Document 25   Filed 01/20/06   Page 2 of 29 PageID #: 2

### B.     Factual Background

Williams was born on July 27, 1948 and has an eleventh grade education.  Plaintiff previously worked as a school custodian, a position she held from December 1985 until August 1998.  Nevertheless, she stopped working on May 2, 1998 after a heart attack and stent implant, and has not attempted to work since that time.  Accordingly, Williams alleges disability beginning May 2, 1998.  Plaintiff testified she is unable to work due to injuries to her right shoulder, right wrist, back, left leg, and left arm, which she incurred between July 1995 and January 1998.  Williams stated she had also received mental health treatment for depression.  Williams, however, claims disability primarily due to the angioplasty and stent implant she underwent in May 1998.

On May 2, 1998, Williams was admitted to the emergency room at the Baptist Hospital in Nashville, Tennessee for complaints of chest pain.  She was seen in consultation by Dr. Andrew Carlsen and underwent balloon angioplasty with placement of a stent.  No complications were noted during the procedure and Plaintiff did well post-operatively.  Plaintiff was seen in follow-up by Dr. Carlsen on June 10, 1998, and reported she was doing well and denied any pain to suggest recurrent angina pectoris since her angioplasty in May.  At that time, she had no activity restrictions.  (AR 272.)

On September 9, 1998, Plaintiff was seen in the outpatient department for complaints of chest pain.  Dr. Carlsen noted that if a lighter duty job were not available, she would need to consider retirement because of her inability to physically perform her present job.  She was instructed to participate in an active aerobic exercise program and to control her weight and blood pressure.  (AR 262.)

-3-

On March 23, 1999, Plaintiff was seen by Dr. Ralph S. Hobbs for a routine physical examination. The neurological examination showed mild depressed affect. Dr. Hobbs diagnosed Plaintiff with depression and CAD. (AR 273.)

Dr. Lloyd K. Huang performed a consultative medical examination on April 26, 1999. He found that Williams had normal appearance of the cervical spine with normal range of motion. There was also normal range of motion in the shoulders, elbows, and wrists, and she had normal hand grip strength. Plaintiff had a normal lumbar spine. The straight leg-raising test was negative. She had normal range of motion of the hips, knees, and ankle joints. Test results suggested mild to moderate restrictive lung disease. Based upon his examination and findings, Dr. Huang assessed Plaintiff with coronary artery disease, hypertensive cardiovascular disease, restrictive lung disease/chronic obstructive pulmonary disease, and degenerative disc disease of the lumbar spine. (AR 275-81.)

Dr. Huang noted that although Plaintiff complained of chest pain since her angioplasty, the thallium stress test and repeat cardiac catheterization in September did not reveal significant blockage and there was normal left ventricular ejection fraction. He further opined that her complaints could be related to her heavy cigarette use and to a mild degree her restrictive/obstructive pulmonary disease. Nonetheless, her ejection fraction was normal and there were no significant current coronary lesions. He noted she could proceed with normal activities and had a favorable prognosis. Dr. Huang further opined Plaintiff was able to occasionally lift forty pounds and frequently lift twenty pounds, that she could stand and walk for five hours out of an eight-hour day, and that she could sit for eight hours of an eight-hour day with breaks. (AR 277.)

-4-

Dr. Robert Lane, a licensed psychologist, did a consultative psychological evaluation on July 6, 1999. Based on the results of the evaluation, Dr. Lane opined Plaintiff was not significantly limited in her ability to understand and remember instructions, sustain concentration and persistence, have appropriate social interaction, be aware of normal hazards and take precautions, travel unaccompanied in unfamiliar places, use public transportation, set realistic goals, and make plans independently of others. She demonstrated the ability to learn new information, and her memory was functioning well; she had no loss of language or motor skills, and she had the ability to plan, initiate, sequence, and monitor complex behavior. She was able to provide accurate information about her past and present without difficulty. (AR 299-301.)

Dr. Lane noted that while she may be experiencing some depression and anxiety related to her health, it did not appear to be at a level which would significantly impair her mental ability to function socially or occupationally. Based upon his findings, Dr. Lane diagnosed Plaintiff with borderline intellectual functioning (provisional) and "alleges heart problems and high blood pressure." (AR 301.)

Based on the foregoing evidence, the ALJ found that Williams was not disabled. The ALJ found that Williams had not engaged in substantial gainful activity since the alleged onset of disability. The ALJ also found that Plaintiff's chronic ischemic heart disease with angina and borderline intellectual functioning are severe impairments. However, the ALJ found that the impairment did not meet or medically equal one of the Listing-level impairments. The ALJ also found that Plaintiff is unable to perform any of her past relevant work, but has the residual functional capacity to perform a significant range of light work, and there are a significant

number of jobs in the national economy that Plaintiff could perform given her age, experience, education, and residual functional capacity. Therefore, the ALJ concluded that Williams was not under a "disability," as defined in the Social Security Act, at any time through the date of the decision. (See AR 36) (citing 20 C.F.R. §§ 404.1520(f), 416.920(f)).

## II.      STANDARD OF REVIEW

The Court's review of the portions of the report to which Plaintiff objects is de novo. 28 U.S.C. § 636(b). An ALJ's decision will be upheld if it is supported by substantial evidence. Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984). Substantial evidence is "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." Richardson v. Pereles, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla of evidence, but less than a preponderance." Bell v. Commissioner, 105 F.3d 244, 245 (6th Cir. 1996) (citing Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)).

## III.      PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT

### A.      Plaintiff Objects To Magistrate's Finding That There Is Substantial Evidence To Support The ALJ's Finding Of No Listing-Level Impairment Under Listing 12.05C (Mental Retardation)

Plaintiff raises numerous objections to the Magistrate's finding that there is substantial evidence to support the ALJ's finding that there is no Listing-level impairment. These objections can be broken down into three main arguments. Plaintiff first contends that the case should be remanded because the ALJ improperly analyzed eligibility under section (D) of Listing 12.05 and not section (C). In the alternative, Plaintiff argues that the ALJ's finding of no

Case 3:02-cv-00805   Document 25   Filed 01/20/06   Page 6 of 29 PageID #: 6

Listing-level impairment under Listing 12.05C is not supported by substantial evidence. Finally, Plaintiff asserts that, contrary to the ALJ's finding, she meets the requirements of Listing 12.05C. Each one of Plaintiff's arguments fails.

The starting point is Listing 12.05, which states, in relevant part:

12.05 Mental Retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

. . .

B.      A valid verbal, performance, or full scale IQ of 59 or less;

Or

C.      A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

Or

D.      A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:

1.      Marked restriction of activities of daily living; or
2.      Marked difficulties in maintaining social functioning; or
3.      Marked difficulties in maintaining concentration, persistence or pace; or
4.      Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05 ("Listing 12.05"). In order for an impairment to meet Listing 12.05, it must satisfy "the diagnostic description in the introductory paragraph and any one of the four sets of criteria." Id. § 12.00(A) (emphasis added); see also Daniels v. Comm'r of Soc. Sec., 70 F. App'x 868, 872 n.1 (6th Cir. 2003) (requiring claimant to meet requirements of both introductory paragraph and specific Listing). If the introductory paragraph

-7-

is not satisfied, the Listing has not been met and it is unnecessary to continue with the analysis under sections A, B, C or D.

The introductory paragraph of Listing 12.05 defines Mental Retardation through three basic criteria: (1) significant subaverage general intellectual functioning accompanied by (2) adaptive functioning which was (3) initially manifested before age twenty-two. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05. This language essentially tracks that of the American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, Text Revision 41 (4th ed. 2000) ("DSM-IV-TR"), which states:

> The essential feature of Mental Retardation is significantly subaverage general intellectual functioning (Criterion A) that is accompanied by significant limitations in adaptive functioning in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety (Criterion B). The onset must occur before age 18 (Criterion C).[1]

1.    *Listing 12.05D*

Plaintiff argues that because the ALJ purported to analyze the case under Listing 12.05D instead of 12.05C, the ALJ "might very well have confused the requirement in 12.05D of marked functional impairment with the criteria in the definition of mental retardation regarding deficits or impairments in adaptive functioning." (Doc. No. 23 at 3.)[2] This is not the case. Although the

---

[1] "We have recognized that Listing 12.05 tracks the Diagnostic and Statistical Manual of Mental Disorders, one of the leading texts in medicine." Burrell v. Comm'r of Soc. Sec., No. 99-4070, 2000 WL 1827799, at *2 (6th Cir. Dec. 8, 2000) (unpublished table disposition) (citing Brown v. Sec'y of Health & Human Servs., 948 F.2d 268, 270 (6th Cir. 1991)).

[2] The ALJ stated:"Although 12.05 C [sic] states a valid verbal, performance, or full-scale IQ of 59 or less, I believe the representative intended to argue Listing 12.05(D) since the full-scale IQ score was 70." (AR 29.) It appears that the ALJ mistakenly referred to Listing 12.05B

ALJ may have mistakenly referenced Listing 12.05D instead of 12.05C, the ALJ did not rest his decision on Plaintiff's failure to meet the requirements of Listing 12.05D or C, but rather on her failure to meet the definition of mental retardation as described in the introductory paragraph of Listing 12.05.

The introductory paragraph of Listing 12.05 defines mental retardation as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., . . . before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05. Here, the ALJ clearly stated that the "diagnostic criteria for mental retardation required the presence of impairments in adaptive functioning along with a full-scale IQ score of 70 or less." (AR 29) (emphasis added). After making this statement, the ALJ listed a variety of factors to support his decision, and concluded that "[a]lthough her IQ scores meet the diagnostic criterion [of a full-scale IQ score of 70 or less], there is no evidence of impairments in adaptive functioning due to low intellectual functioning." Id. (emphasis added). The words "adaptive," "intellectual" and "functioning" only appear in the introductory paragraph of Listing 12.05 and do not reappear in sections A through D of Listing 12.05. See 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05. Thus, it is clear that the ALJ analyzed and found that the Plaintiff did not fulfill the criteria of the introductory paragraph of Listing 12.05. As a result, there was no need for the ALJ to determine whether the Plaintiff met the requirements of A, B, C or D of Listing 12.05. Indeed, other than a reference to the Plaintiff's IQ score of 70, the ALJ's decision is devoid of any analysis of the factors in 12.05C or D. Accordingly, the Magistrate was correct

as 12.05C. Accordingly, it is unclear whether the ALJ's reference to Listing 12.05D is actually to 12.05C, because that was next in his numbering, or to 12.05D, as both Listing 12.05C and D require an IQ score of 70 or less.

in stating that although the ALJ's opinion purported to analyze Plaintiff's evidence under Listing 12.05D rather than 12.05C, "the mistake did not in any way undermine the substance of the analysis or the conclusions reached" (R&R 26 n.3.) and remand is unnecessary.

> 2.  *Substantial Evidence Supports The ALJ's Finding That Plaintiff Did Not Meet The Introductory Paragraph Of Listing 12.05C*

In the alternative, Plaintiff asserts that the ALJ's analysis of the introductory paragraph of Listing 12.05 was erroneous and not supported by substantial evidence. Although the Plaintiff concedes that the ALJ discussed adaptive functioning, the second requirement of the introductory paragraph of Listing 12.05, and provided a "general review of [Plaintiff's] level of adaptive functioning at various points in her life" (Doc. No. 23 at 5), she argues that this is insufficient. Plaintiff asserts that the ALJ should have explicitly found that Plaintiff "failed to show deficits in adaptive behavior 'initially manifested during the development period (before age 22).'" (Id.) In this same vein, Plaintiff argues that the Magistrate's finding that there is substantial evidence to support the ALJ's finding on this issue is prohibited post hoc rationalization. See SEC v. Chenery Corp., 332 U.S. 194, 196 (1947) ("[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.")

To begin with, the Court finds that on the issue of adaptive functioning prior to age twenty-two, the ALJ was quite clear. Indeed, he stated:

Ms. Williams has maintained steady employment throughout her adult life for 16

-10-

years until her angioplasty and stent implant, and describes normal interpersonal relationships with her husband of 32 years and family members. <u>She has admitted to quitting school because she was pregnant, not due to academic reasons. The claimant's school record shows she averaged grade levels of B's and C's during the first 7 years of school and continued to maintain passing grades until she dropped out in the 10th grade. There is no evidence of special education classes or any indication of an inability to learn as she maintained passing grades in reading, writing, and English and was promoted to the tenth grade from the ninth.</u> She testified she maintains a valid driver's license with no restrictions.

(AR 29) (emphasis added). The emphasized sentences relate to Plaintiff's adaptive functioning <u>prior to age twenty-two</u>. Moreover, out of the seven to eight reasons the ALJ provides to support his finding of Plaintiff's level of adaptive functioning, three to four – half – relate directly to Plaintiff's adaptive functioning prior to age twenty-two.

Of critical importance to this Court's analysis that the ALJ did consider and conclude that the Plaintiff did not show deficits in adaptive functioning initially manifested before age twenty-two, is the following colloquy between the ALJ and Plaintiff's attorney, followed by questioning of the Plaintiff:

ALJ:        Now, are you abandoning the 1205C?

ATTY:       Oh, no, sir. I think that that is, I mean, as I said in the brief I'm just not going to take up more of your time here today. I think that that's a winner.

ALJ:        Well, <u>you haven't really developed fully any testimony that I've heard anyway, that deficits and – let me find the exact key word. With deficits and adaptive behavior initially manifesting during the development period before age twenty-two.</u>

ATTY:       The school and academic records I think would show clear deficits there. And, dropping out of school before graduating would certainly be indicative to deficit. So, I can do that if, your honor, would like.

ALJ:        Well, now's the time to do it. If you've got in here the school

-11-

records.  But, let me just ask Ms. Williams [INAUDIBLE] for just a second and go back to her.  Were you in regular education Ms. Williams, when you went to school?

CLMT:   Yes, sir.

ALJ:    Regular courses, not.  And, your grades show B's and C's and primarily B's and C's.  And, then in your English – let's see.  Is that grade 73 and 70 and 70 and 71, 87, 75.  And, then physical ed you had failing grades there on two occasions. . . .

(AR 75-76) (emphasis added).  These questions were followed by the ALJ's questioning of the Plaintiff's reading level, during which the Plaintiff admitted that she could read simple things, attempted to read the newspaper, could fill out a job application, and attempted to read the Bible with help from others.  (Id. at 76.)

The ALJ expressly cited the standard for mental retardation and noted the requirement that it manifest itself prior to age twenty-two during the hearing.  He then informed Plaintiff's attorney that he had not heard any testimony that would satisfy the standard.  In response, Plaintiff's attorney specifically stated that he believed the academic records and dropping out of school "show clear deficits."  (Id. at 75.)  As noted above, the ALJ specifically referenced Plaintiff's academic history before coming to his conclusion of no Listing-level impairment.  (AR 29.)  As a result, contrary to Plaintiff's objection, this Court finds that the ALJ explicitly found that Plaintiff failed to show deficits in adaptive functioning initially manifested during the development period (before age twenty-two).  Because the ALJ sufficiently explained his decision, the Magistrate did not engage in post hoc rationalization.

The next question for this Court is whether there is substantial evidence to support the ALJ's decision that "there is no evidence of impairments in adaptive functioning due to low intellectual functioning" before age twenty-two.  (AR 29.)  As the Magistrate Judge correctly

-12-

pointed out, other than her school records, "[t]here is simply no evidence in the record of objective test results or examinations contemporaneous with plaintiff's development period. Nor is there proof, relevant to any time period, that plaintiff suffers the required deficits in adaptive functioning." (R&R 26.)

Plaintiff argues that the Magistrate is imposing a requirement of contemporaneous testing that Listing 12.05C does not contain. For support of this argument, Plaintiff relies on a comment to Listing 12.05C that addresses this issue:

12.05 Mental Retardation

Comment: One commenter viewed the second paragraph of proposed listing 12.05 as requiring evidence of intelligence testing prior to age 18. The commenter offered several arguments why this would be difficult for adults to establish and why it would be preferable to use more recent information.

Response: We adopted the comment. We did not intend the second paragraph of proposed listing 12.05 to require intelligence testing (or other contemporary evidence) prior to age 18, but we believe that the proposed listing could be misinterpreted, even though it was the same as in the prior rules. The proposed listing, as in the prior rules, stated that the significantly subaverage general intellectual functioning with deficits in adaptive behavior must have been initially "manifested" during the developmental period. We have always interpreted this word to include the common clinical practice of inferring a diagnosis of mental retardation when the longitudinal history and evidence of current functioning demonstrate that the impairment existed before the end of the developmental period. Nevertheless, we also can see that the rule was ambiguous. Therefore, we expanded the phrase setting out the age limit to read: 'i.e., the evidence demonstrates or supports onset of the impairment before age 22.'

Revised Medical Criteria For Evaluating Mental Disorder And Traumatic Brain Injury, 65 Fed. Reg. 50772 (Aug. 21, 2000.) While this comment makes clear that intelligence testing (or other contemporaneous evidence) prior to age 18 is not required, such contemporaneous testing and/or evidence is certainly not prohibited. Indeed, the comment appears to be a recognition of the fact that contemporaneous testing and/or other evidence may be difficult to obtain. Accordingly, in

-13-

the absence of contemporaneous testing and/or evidence, it is permissible to rely on the

"common clinical practice of inferring a diagnosis of mental retardation when the longitudinal

history and evidence of current functioning demonstrate that the impairment existed before the

end of the developmental period." Id. As a result, this Court must first consider whether there is

any contemporaneous testing and/or other evidence before examining the non-contemporaneous

testing and/or other evidence from which the onset of the impairment before age twenty-two may

be inferred.[3] In the present case, there are no contemporaneous intelligence testing results. The

only other contemporaneous evidence regarding Plaintiff's intellectual and adaptive functioning

before age twenty-two is Plaintiff's school records.

The Court agrees with the Magistrate that this case is akin to Foster, in which the Sixth

Circuit found that Foster did not meet the requirements of Listing 12.05C. 279 F.3d at 354-56.

In analyzing the introductory paragraph of Listing 12.05, the Sixth Circuit noted that apart from

Foster's school records, there was no testing or evaluation contemporaneous with her

developmental period. Id. at 355. Foster's school records demonstrated that she had completed

ninth grade in special education classes and had tried four times without success to earn her

GED. Id. at 352, 355. The Court also noted that Foster's reasons for not continuing her studies

were unclear. Id. at 355. Based on this assessment, the Court found that "Foster has failed to

show that her general intellectual functioning was 'significantly subaverage' prior to [age

_____

[3] Although the Plaintiff criticizes both the Sixth Circuit in its Foster v. Halter, 279 F.3d
348, 355-56 (6th Cir. 2002) decision and the Magistrate Judge for imposing a contemporaneous
testing requirement, neither has done so. To the contrary, both have simply followed the rule as
this Court has construed it above by first noting that no contemporaneous testing exists,
examining the little contemporaneous evidence that does exist (school records), and then
reviewing the non-contemporaneous evidence.

-14-

twenty-two]." Id.

As in Foster, there is no contemporaneous evidence in this case other than Plaintiff's school records. Importantly, Plaintiff's academic record appears to be better than Foster's record. Here, Plaintiff completed most of her schooling in regular classes with Bs and Cs. Plaintiff only started skirting failing grades in ninth and tenth grades. Moreover, unlike Foster, the reason for Plaintiff not completing high school was due to her pregnancy, not academic reasons. As a result, consistent with Foster, while Plaintiff's school records demonstrate her relatively poor academic performance, these documents alone are insufficient to meet the requirements of the introductory paragraph of Listing 12.05C.[4]

Accordingly, the Court must go to the second step of the review to determine if there is other, non-contemporaneous evidence from which the onset of the impairment before age twenty-two may be inferred. Again, the Court is in agreement with the Magistrate that there is no proof "relevant to any time period, that plaintiff suffers the required deficits in adaptive function." (R&R at 26) (emphasis added). The Magistrate relied primarily on Dr. Lane's "assessment of ability to do work related activities (mental)" which did not reflect any deficits in adaptive functioning. (AR 301.) Dr. Lane found:

---

[4] Plaintiff attempts to distinguish Foster on the basis that Foster's later work as an accounting clerk at a bank and a liquor store clerk demonstrate that she performed relatively complicated work, which precluded a finding under Listing 12.05C. 279 F.3d at 355. In contrast, Plaintiff maintained an unskilled, custodian position throughout most of her career. This distinction is irrelevant because the Court is simply relying on Foster for the proposition that a poor academic record, without other contemporaneous evidence, is insufficient to meet the requirements of the introductory paragraph of Listing 12.05C. Furthermore, Plaintiff is correct that in Foster the non-contemporaneous evidence that precluded a finding under 12.05C was Foster's work history. Here, however, the non-contemporaneous evidence precluding a finding under 12.05C is Dr. Lane's psychological evaluation, again rendering Plaintiff's distinction irrelevant.

-15-

Based on the results of this evaluation, it appears that Ms. Williams is not significantly limited in her ability to understand and remember instructions, sustain concentration and persistence, have appropriate social interaction, be aware of normal hazards and take precautions, travel unaccompanied in unfamiliar places, use public transportation, set realistic goals, and make plans independently of others. Ms. Williams demonstrated the ability to learn new information, that her remote memory is functioning well, that she has no loss of language or motor skills, and that she has the ability to plan, initiate, sequence, and monitor complex behavior. Ms Williams was able to provide accurate information about her past and present without apparent difficulty. While Williams may be experiencing some depression and anxiety related to her recent poor health, it does not appear to be at a level which would significantly impair her mental ability to function socially or occupationally.

(AR 301.)

Plaintiff argues that Dr. Lane did not make a specific finding of deficits in adaptive functioning in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety. The Court disagrees. Throughout Dr. Lane's report, on which the ALJ relied, Dr. Lane discussed each of these areas and found that Williams' functioning was not significantly limited. (See AR 27-28; 299-301) (discussing in detail Plaintiff's adaptive functioning in each of the skill areas noted above). Importantly, Dr. Lane's assessment does not indicate deficits in adaptive functioning prior to age twenty-two. See King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984) (finding that lack of evidence to support the claim provides substantial evidence to defeat the claim.)

In addition, Plaintiff urges the Court to find that Dr. Lane's assessment is at odds with the other evidence in the record. The Court declines to do so. Both Dr. Lane and Dr. Areden found Williams to have borderline intellectual functioning, although Dr. Lane's finding was provisional. Accordingly, the two reports are consistent. Plaintiff prefers Dr. Areden's

-16-

assessment because Dr. Areden appears to find that Plaintiff meets the requirements of mental retardation, while Dr. Lane does not.

In the section entitled "12.05 Mental Retardation and Autism," Dr. Areden checked off the box which quoted the introductory paragraph of Listing 12.05. (AR 306.) Dr. Areden, however, did not find that the requirements of Listing 12.05A-D were satisfied. Id. Instead Dr. Areden found that Plaintiff met the requirements of the introductory paragraph of Listing 12.05 because she had borderline intellectual functioning. Id. Dr. Areden, however, did not provide any rationale for this conclusion. First, borderline intellectual functioning is not the same as mental retardation. See DSM-IV-TR, supra, at 41, 48, 740 (recognizing, nevertheless, that differentiating between borderline intellectual functioning and mild mental retardation may be difficult); see also (Doc. No. 21 at 7) (Plaintiff concedes borderline intellectual functioning is different from mental retardation). Second, this case is remarkably similar to Daniels v. Comm'r of Soc. Sec., 70 F. App'x 868 (6th Cir. 2003). In that case, one of the claimant's doctors had checked off the box for the introductory paragraph of Listing 12.05 based on his finding of "Borderline I.Q." The Sixth Circuit, however, rejected the doctor's "perfunctory box-checking" as evidence that the claimant met the requirements of Listing 12.05. Id. at 873. In the present case, the Court finds Dr. Areden's box-checking, without more, to be unhelpful. For this same reason, the Court declines to consider Plaintiff's remaining reliance on Dr. Areden's bare-boned report.

Finally, Plaintiff argues that this case is similar to Brown v. Sec'y of Health & Human Servs., 948 F.2d 268 (6th Cir. 1991) in which the Sixth Circuit found that the ALJ's finding that claimant did not meet the requirements of Listing 12.05C was not supported by substantial

-17-

evidence.  In that case, the ALJ had deemed invalid an IQ score of 68 on the basis that it was inconsistent with Brown's functional abilities, including using public transit, having a driver's license, visiting friends, making change at a grocery store, doing his own laundry and cleaning his room, completing the sixth grade, having a limited level of reading comprehension, and recording mileage as a truck driver.  Id. at 269-70.  The Sixth Circuit stated that these functional abilities, along with an IQ of 68, could support a finding of mild mental retardation.  Id. Importantly, however, the Sixth Circuit did not decide the issue, holding only that because Brown's functional abilities were not inconsistent with an IQ score of 68, the Secretary's invalidation of the IQ score was not supported by substantial evidence.  Id. at 270-71.  In addition, the Sixth Circuit remanded the case because the Secretary, ALJ and District Court did not address the issue of whether Brown's mental impairment manifested itself before age twenty-two or was a result of heavy alcohol use after the age of twenty-two.  Id. at 271.

The present case is markedly different.  The ALJ did not invalidate Williams' IQ score of 70.  To the contrary, the ALJ accepted the Plaintiff's IQ scores as valid.  (AR 29.)  Plaintiff, however, argues that the ALJ's description of Williams' adaptive functioning, along with Dr. Lane's psychological evaluation, are essentially the same as the Sixth Circuit's description of Brown's adaptive functioning, which the Sixth Circuit found to be consistent with mild mental retardation.  Id. at 270 ("Mr. Brown's biography fits squarely within the DSM-III-R of a mildly retarded individual.").  The Brown court, however, made clear that this mild mental retardation must have manifested itself before age twenty-two for the claimant to meet Listing 12.05C.  Id. at 271.  Assuming arguendo, that Williams' adaptive functioning meets the DSM-IV-TR description of mild mental retardation, Plaintiff still cannot meet the requirements of Listing

-18-

12.05C because the Court has already found that there is substantial evidence to support the ALJ's determination that Williams did not demonstrate deficits in adaptive functioning in the developmental period prior to age twenty-two.

In sum, the Court ADOPTS the Magistrate's recommendation that there is substantial evidence to support the ALJ's finding of no Listing-level impairment.

3.      *Plaintiff Urges That There Is Substantial Evidence To Support A Finding Of Deficits in Adaptive Functioning*

The Plaintiff next argues that there is substantial evidence in the record to prove that she does have the requisite deficits in adaptive functioning. As the Court has found that there was substantial evidence in the record to support the ALJ's conclusion of no Listing-level impairment, it does not matter that the evidence may also support a different conclusion. "Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached." Her v. Comm'r of Soc. Sec., 203 F.3d 389, 389-90 (6th Cir. 1999).

**B.      Plaintiff's Objection To Magistrate's Finding That There Was No Error In Failing To Consider Williams' Obesity**

Plaintiff argues that because her weight has been between 183 and 199 pounds in 1998, and between 188.5 and 195 pounds in 1999, the record establishes a "consistent pattern of obesity." Obesity is determined through Body Mass Index ("BMI"). "BMI is the ratio of an individual's weight in kilograms to the square of his or her height in meters ($kg/m^2$). For adults, both men and women, the Clinical Guidelines describe a BMI of 25-29.9 as 'overweight' and a

-19-

BMI of 30.0 or above as 'obesity.'"  Evaluation of Obesity, Social Security Regulation 02-01p,

2000 WL 628049, at *2 (Sept. 12, 2002).  Accordingly, Plaintiff's BMI has ranged from 28.78 at

her lowest weight of 183 pounds to 31 at her highest weight of 199 pounds.[5]  Relying on the

BMI index alone, Plaintiff has ranged between overweight and obese from January 1998 to

December 1999.

      In support of her objection, Plaintiff relies on Social Security Regulation 02-01p, 2000

WL 628049, at *3, which provides that even "[w]hen the evidence in a case does not include a

diagnosis of obesity, but does include clinical notes or other medical records showing

consistently high body weight or BMI, we may ask the medical source to clarify whether the

individual has obesity."  The regulation goes on to say that "[w]e will consider the individual to

have obesity as long as his or her weight or BMI shows essentially a consistent pattern of

obesity."  Id. at *4.

      However, the burden lies with Plaintiff to prove that she is disabled.  Casey v. Sec'y of

Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993).  A lack of evidence to support the

claim provides substantial evidence to defeat the claim.  See King v. Heckler, 742 F.2d 968, 973

(6th Cir. 1984).  Courts have found that a lack of evidence justified the ALJ's failure to consider

a claimant's obesity.  In Essary v. Comm'r of Soc. Sec., 114 F. App'x 662, 667 (6th Cir. 2004),

the court considered a similar situation.  In Essary, the ALJ did not elaborate on the issue of

obesity.  The court found that it was likely that the ALJ did not do so because "Essary failed to

---

    [5]  Plaintiff's weight of 183 and 199 pounds converts to 83.18 and 90.45 kilograms,
respectively.  Plaintiff's height of 67.25 inches converts to 1.7 meters.  Using the formula for
calculating BMI, her lowest BMI is $83.18/1.7^2$, which equals 28.78, and her highest BMI is
$90.45/1.7^2$, which equals 31.

-20-

present evidence of any functional limitations resulting specifically from her obesity." <u>Id.</u>
Further, the Eighth Circuit in <u>Forte v. Barnhart</u>, 377 F.3d 892, 896 (8th Cir. 2004), rejected
Plaintiff's argument that the ALJ erred in failing to consider his obesity in assessing his residual
functional capacity. The Eight Circuit reasoned that "[a]lthough his treating doctors noted that
[Plaintiff] was obese and should lose weight, none of them suggested his obesity imposed any
additional work-related limitation, and he did not testify that his obesity imposed additional
restrictions." <u>Id.</u>

  The Magistrate rejected the obesity argument because Plaintiff did not allege, and the
medical record does not reveal, any diagnosis of obesity, or any prescribed treatment for obesity.
The Magistrate concluded that the ALJ could not be faulted for "failing to independently glean
from such scant evidence and the mere recording of plaintiff's vital statistics that her weight
might satisfy certain 'national' criteria for obesity . . . so as to establish it as a severe
impairment." (R&R 24.) Moreover, Plaintiff did not name this impairment in support of her
application for benefits. (<u>See</u> AR 20, 111-113, 130, 325-27.)

  This Court agrees with the Magistrate's finding that the ALJ did not err in failing to
consider the obesity claim. The Plaintiff is correct in stating that obesity can be implied from a
consistently high weight or BMI. Evaluation of Obesity, Social Security Regulation 02-01p,
2000 WL 628049, at *3 (Sept. 12, 2002). Plaintiff, however, did not produce any evidence of
her BMI. In addition, her medical files record fluctuating, albeit high, weight. As noted above,
her fluctuating weight placed her on the borderline of national standards of overweight to obese.
Without a BMI or actual diagnosis of obesity, therefore, these fluctuating weight measurements,
without more, are not sufficient evidence from which the ALJ could have determined that

-21-

Plaintiff is obese. A lack of evidence to support the claim provides substantial evidence to defeat the claim. <u>See</u> <u>King</u>, 742 F.2d at 973.

Moreover, as in <u>Essary</u> and <u>Forte</u>, Williams' doctors did note that she was overweight and should lose weight. Nevertheless, most of her examinations did not result in an explicit determination of obesity. (<u>Cf.</u> AR 253) (describing abdomen as obese during physical examination). Even if obesity can be implied, none of the doctors found that Williams' weight imposed any additional work related limitation. Furthermore, Plaintiff did not testify that her weight imposed additional restrictions, and as stated by the Magistrate Judge, the Plaintiff did not even mention obesity in her application for disability. Williams' weight history was in the ALJ's exhaustive review of the medical record and was considered by the ALJ. The ALJ did not err in failing to give it further consideration due to the lack of evidence to support the claim that she was obese and that her weight imposed any work related limitations. Accordingly, the Court ADOPTS the Magistrate's recommendation on this issue.

C.      **Plaintiff's Objection To Magistrate's Finding That The ALJ Did Not Err In Failing To Consider As "Severe" Certain Impairments Including Restrictive Lung Disease/COPD And Degenerative Arthritis Of The Lumbar Spine**

An impairment is considered "severe" if it significantly limits a claimant's ability to do basic work activities. <u>Farris v. Sec'y of Health & Human Servs.</u>, 773 F.2d 85, 90 (6th Cir. 1985). Stated differently, an impairment is not severe if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience. <u>Id.</u> (citations omitted). Plaintiff also points to Social Security Regulation 85-28, which provides that:

An impairment or combination of impairments is found 'not severe' . . . when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work . . . .  Although an impairment is not severe if it has no more than a minimal effect on an individual's physical or mental ability(ies) to do basic work activities, the possibility of several such impairments combining to produce a severe impairment must be considered.

1985 WL 56856, at *3; see also 20 C.F.R. §§ 404.1523 and 416.923 (stating that when assessing the severity of impairments, the impact of the combination of the impairments must be considered).

Plaintiff complains that the ALJ's failure to find Plaintiff's restrictive lung disease/chronic obstructive pulmonary disease ("COPD") and degenerative arthritis of the lumbar spine as "severe" impairments was in error.  Plaintiff's sole argument in support of this objection, is that Dr. Huang's opinion, which was given "controlling weight," contains a diagnosis of restrictive lung disease/COPD and degenerative arthritis of the lumbar spine.  (AR 32, 111-13, 277, 325-27.)

The Magistrate found that the ALJ did not err for a number of reasons.  First, the Plaintiff did not name any of these impairments in support of her application for benefits.  (See AR 20, 130.)  Second, the ALJ recited all of the findings concerning these impairments in his exhaustive review of the medical record, and clearly considered them in combination with her other impairments in arriving at his residual functional capacity finding.  (See AR 30-32.)

The Magistrate found that the ALJ properly discounted the restrictive lung disease/COPD impairment in view of the ALJ's consideration of the Plaintiff's poor initial effort during pulmonary testing, the mild to moderate nature of the impairment even considering what appear to be flawed test results, the diagnosing physician's opinion that Plaintiff could proceed with

-23-

normal activities and that Plaintiff had a favorable prognosis (including a residual functional capacity for significant lifting, standing, walking, and sitting), Plaintiff's report that she had shortness of breath only with excessive activity, and otherwise normal findings on examination of the lungs. (R&R 24.) Similarly, with regard to Plaintiff's lumbar spine, the ALJ considered the magnetic resonance imaging that revealed only mild degenerative changes (AR 298), and Dr. Huang's notation of negative results on straight leg raising and normal lumbar spine with only a slight restriction on extension (AR 26).

This Court agrees with the Magistrate's analysis and ADOPTS his reasoning on this issue as there is substantial evidence in the record to support the ALJ's conclusion.


### D. Plaintiff Objects to Magistrate's Finding That The ALJ Did Not Err In Failing To Consider And Accord Appropriate Weight To The Opinions Of Her Treating Physician

The Plaintiff asserts that the ALJ's failure to accord Dr. Carlsen's statement weight, and give good reasons for the weight accorded, is prejudicial error, as the opinions of treating physicians are entitled to great weight. See e.g., Farris v. Sec'y of Health & Human Servs., 773 F.2d 85, 90 (6th Cir. 1985); Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Hurst v. Schewiker, 725 F.2d 53, 55 (6th Cir. 1984); Stamper v. Harris, 650 F.2d 108, 111 (6th Cir. 1981); Branham v. Gardner, 383 F.2d 614, 634 (6th Cir. 1967). The Plaintiff argues that the ALJ is required by regulation to give "good reasons" for the weight accorded the opinions of a claimant's treating physicians. See 20 C.F.R. § 404.1527(d)(2).

Plaintiff's treating cardiologist, Dr. Andrew Carlsen, opined in a statement on September

30, 1998:

> Mrs. Williams underwent a PTCA with documented patency recently when she
> was readmitted for reevaluation of chest pain. She experiences a good deal of job
> stress and is unable to cope with her activities. I would recommend that she be
> considered for disability.

(AR 270.) Plaintiff argues that this statement supports Williams' claim that she is disabled and
should have been given controlling weight.

The Magistrate found that the brief note from Dr. Carlsen does not even contain an
opinion that the Plaintiff is disabled. The note simply states a recommendation to consider her
for disability based on the Plaintiff's unexplained "inability to cope with her activities." (Id.)
Moreover, the note is inconsistent with Dr. Carlsen's other evaluations because it was written
less than three months after Dr. Carlsen had noted that Plaintiff was doing well and was under no
activity restrictions (AR 272), and less than one month after Plaintiff was readmitted to the
hospital for a further procedure on her heart (AR 271). Based on the above reasons, the
Magistrate concluded that "even if the note from Dr. Carlsen can be viewed as a medical opinion
that should have been mentioned (and not merely considered) by the ALJ, it was properly
discounted as meriting no further discussion." (R&R 25.)

This Court agrees with the Magistrate that the note does not state an opinion on
Williams' disability. The first part of the note states that she is being reevaluated for chest pain,
which is a fact and not an opinion on Williams' condition. Alternatively, the ALJ found that
Williams had a severe heart condition and this part of the note was given "controlling weight."
The last part of the note gives only a recommendation that Williams be considered for disability.
As the ALJ considered Williams for disability, this part of the note has been given "controlling

-25-

weight." Furthermore, the ALJ is not bound by a treating physician's statement that a claimant is "disabled" because "[u]ltimately, of course, the determination of disability is the prerogative of the Secretary, not the treating physician." <u>Harris</u>, 756 F.2d at 435, <u>see also</u> <u>King</u>, 742 F2d. at 973.

The only part of the note that may contain an opinion is the second sentence, which states that the Plaintiff experiences a good deal of job stress and is unable to cope with her activities. It is not clear that "a good deal of job stress" is a greater restriction than that identified by the ALJ. On Williams' last visit with Dr. Carlsen, twenty-one days before the note was written, Dr. Carlsen noted that she would not be able to continue her present job. (AR 25, 262.) The ALJ in his decision found that she could not return to her previous job as a custodian. (AR 33, 35.) As Dr. Carlsen and the ALJ agreed that Williams could not continue at her current job, the opinion that she experiences a "good deal of job stress" was given proper weight. Finally, the statement that "she is unable to cope with her activities" is ambiguous and does not provide a clear opinion on its relation to disability. As noted by the Magistrate, three months before writing this note, Dr. Carlsen had stated that Plaintiff was doing well and was under no activity restrictions. (AR 272.) Plaintiff's treating physician has therefore given contradictory opinions on Williams' ability to cope with her activities. Furthermore, the main point of the note is that Dr. Carlsen recommended Williams be considered for disability, but he did not determine that she was disabled. This recommendation has been given proper weight. For the foregoing reasons, the ALJ did not err in his treatment of this note, and the Court ADOPTS the Magistrate's recommendation.

E.    **Plaintiff Objects To Magistrate's Finding That The ALJ Did Not Err In Failing To Find Her Disabled Pursuant To Grid Rule 202.09**

Plaintiff argues that she meets the requirements of grid rule 202.09, which requires that she is illiterate. "We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name." 20 C.F.R. § 404.1564. The ALJ found that based on the evidence and testimony from Plaintiff, she is not illiterate and does not meet the requirements of 202.09.

Plaintiff relies on Welchance v. Bowen, 731 F. Supp. 806 (M.D. Tenn. 1989) to support her argument that she is illiterate. In Welchance, Plaintiff had completed the sixth grade, but testing showed that she had a reading level of grade 3.7, an arithmetic level of grade 2.7 and an IQ of 72. Id. at 814. The court found that Welchance was illiterate. Id. at 811-818. Plaintiff argues that Williams has a similar case and should also be found illiterate. Her IQ is lower and she has a lower reading level than the Plaintiff in Welchance. (See AR 27, 301.)

The Magistrate correctly points out that Welchance stands only for the proposition that "one is illiterate if one cannot read or write a simple message. This is true regardless of how many years the claimant attended school." Id. at 816; cf. Hamblin v. Heckler, 787 F.2d 590 (6th Cir. 1986) (unpublished table disposition) (claimant who read at a second grade level was not illiterate). The court in Welchance based its decision on the fact that Welchance's ability to read or write a simple message was "not crystal clear from the record." Welchance, 731 F. Supp. at 816. Furthermore, in Welchance, there was proof that Plaintiff had to get a fellow worker to do the little writing that was required for the job. Id.

In this case, the evidence clearly supports that Williams can read and write. Plaintiff testified that she is able to read simple things and that she tries to read the newspaper and her

-27-

Bible.  (AR 76.)  Plaintiff was also able to understand the agency forms well enough to

appropriately respond to the questions asked.  Furthermore, there is no proof that Williams had

to get help to do the reading and writing required for her job.  Moreover, in contrast to her

WRAT3 scores, there is no question that Plaintiff passed grades one through eight, indicating

some ability to read.  For the following reasons, the Court finds that Williams is not illiterate

within the meaning of 20 C.F.R. § 404.1564.  As such, there is substantial evidence to support

the ALJ's conclusion that "[i]t is evident based on the evidence and testimony from the

[Plaintiff] she is clearly not illiterate and does not meet 202.09."  (AR 29.)  Accordingly, the

Court ADOPTS the Magistrate's recommendation on this issue.

-28-

**IV.    CONCLUSION**

The Court finds the Magistrate Judge's Report and Recommendation to be well-founded and supported by the record, and therefore ADOPTS it in its entirety.  Accordingly, Plaintiff's Motion for Judgment on the Administrative Record is DENIED and the Defendant's Motion for Judgement is GRANTED.

It is so ORDERED.

Entered this _____ day of _____, 2005.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT